## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JEREMY MARTINEZ,

       Plaintiff,

vs.                                                                No. CIV 11-1003 JB/LFG

JENNIFER LUCERO,
SHIRLEY LUJAN, and
JACQUELINE BUTLER,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Jacqueline Butler's Motion for

Summary Judgment (Absolute Immunity and Qualified Immunity), filed March 13, 2012 (Doc.

27)("MSJ").  The Court held a hearing on May 4, 2012.  The primary issues are: (i) whether

Defendant Jacqueline Butler, a court clerk for the Eighth Judicial District Court, Taos County, State

of New Mexico, is entitled to absolute immunity for preparing and filing a bench warrant for

Plaintiff Jeremy Martinez rather than the defendant in the criminal complaint "Jeremy Martinez";[1]

(ii) whether Butler is entitled to qualified immunity; and (iii) whether the Court should permit

further discovery before deciding the MSJ.  The Court will grant the MSJ.  The Court finds that

Butler is entitled to absolute and qualified immunity.  The Court will also deny Plaintiff Jeremy

Martinez' ("J. Martinez") request that the Court permit discovery pursuant to rule 56(d) of the

Federal Rules of Civil Procedure.

---

[1]For the sake of clarity, the Court will refer to the plaintiff as J. Martinez and the person
identified in the criminal complaint as Jeremy Martinez.

## **FACTUAL BACKGROUND**

The factual background comes from: (i) J. Martinez' factual allegations and claims, see Complaint for Violation of Civil Rights (dated October 11, 2011), filed November 11, 2011 (Doc. 1-1)("Complaint"); (ii) the affidavits of the Honorable Ernest L. Ortega, State Magistrate Judge, see Affidavit of Ernest L. Ortega, filed March 13, 2012 (Doc. 27-2)(dated February 29, 2012)("Ortega Aff."), Defendant Jennifer Lucero, see Second Affidavit of Jennifer Lucero (dated February 27, 2012), filed March 13, 2012 (Doc. 27-1)("Lucero Aff."), and Butler, see Affidavit of Jacqueline Butler (dated March 12, 2012), filed March 13, 2012 (Doc. 27-3)("Butler Aff."); and (iii) the exhibits attached to those affidavits. On the record without discovery, the material facts are undisputed.[2]

On June 25, 2010, the Eighth Judicial District Attorney filed a criminal complaint in the Taos County Magistrate Court in Taos against a person named Jeremy Martinez. See Ortega Aff. ¶ 5, at 1-2; Lucero Aff. ¶ 4(a), at 1; State v. Martinez, No. M-53-VR-201000039, Criminal Complaint at 4-5, filed March 13, 2012 (Doc. 27-1)("Criminal Complaint"); MSJ ¶ 1, at 5 (setting forth this fact). The Criminal Complaint charged Jeremy Martinez with aggravated battery on a household member, criminal damage to property, and interference with communications. See Ortega Aff. ¶ 5, at 1-2; Lucero Aff. ¶ 4(a), at 1; Criminal Complaint at 4-5; MSJ ¶ 1, at 5 (setting forth this fact). The case was docketed as No. M-53-201000039. See Criminal Complaint at 4-5; MSJ ¶ 1, at 5 (setting forth this fact). The Taos County Magistrate Court handles approximately 6,000 cases per year.

---

[2]J. Martinez asserts that he does not dispute any of the issues of fact raised in the MSJ, but represents that, because no discovery has taken place, "he is hardly in the position to dispute anything." Amended Memorandum in Opposition to Defendant Butler's Motion for Summary Judgment and Request that the Court Refuse to Rule on Motion under Rule 56(f) at 3, filed March 28, 2012 (Doc. 30).

See Ortega Aff. ¶ 4, at 1; MSJ ¶ 2, at 5 (setting forth this fact).  The Criminal Complaint was based on an incident report that Officer Jason Trujillo submitted, which contained the following apparent errors: (i) the social security number for Jeremy Martinez was XXX-XX-7041, which is the social security number of the victim -- Erin Stitt; and (ii) the address for Jeremy Martinez was listed as 52 Arroyo Park Drive, Ranchos de Taos, New Mexico 87557, which is the address for one of the witnesses to the crime -- Eric Heiser.  See Lucero Aff. ¶ 4(a)-(b); Criminal Complaint at 4-5; MSJ ¶ 3, at 5-6 (setting forth this fact).

On June 30, 2010, the Magistrate Court prepared, filed, and mailed a Criminal Summons to Jeremy Martinez at the address listed in the Criminal Complaint -- 52 Arroyo Park Drive. See Lucero Aff. ¶ 4(c), at 2; Ortega Aff. ¶ 6, at 2; State v. Martinez, No. M-53-201000039, Criminal Summons (dated June 30, 2010), filed March 13, 2012 (Doc. 27-1); MSJ ¶ 4, at 6 (setting forth this fact).  Judge Ortega signed the Criminal Summons and ordered Jeremy Martinez to appear in state court on August 2, 2010, at 9:00 a.m. to plead to the charges in the Criminal Complaint.  See Ortega Aff. ¶ 6, at 2; Criminal Summons at 6; MSJ ¶ 4, at 6 (setting forth this fact).  Judge Ortega is a full-time magistrate judge for the Taos County Magistrate Court -- a court of limited original jurisdiction in the Judicial Department of the State of New Mexico.  See Ortega ¶ 3, at 1; MSJ ¶ 5, at 6 (setting forth this fact).  The Criminal Summons stated: "If you fail to appear at the place and time specified, a warrant will be issued for your arrest."  Ortega Aff. ¶ 6, at 2; Criminal Summons at 6; MSJ ¶ 4, at 6 (setting forth this fact).  No person named Jeremy Martinez appeared in response to the Criminal Summons.  See Ortega Aff. ¶ 7, at 2; MSJ ¶ 6, at 6 (setting forth this fact).

On August 2, 2010, in his capacity as a magistrate judge, Judge Ortega instructed Butler, one of the court clerks -- who works under the magistrate judges' supervision and control -- to prepare a draft Bench Warrant for his review ordering Jeremy Martinez' arrest for failure to appear.

See Lucero Aff. ¶ 4(e), at 2-3; Ortega Aff. ¶ 8, at 2; Butler Aff. ¶ 6, at 2; State v. Martinez, No. M-53-VR-201000039, Bench Warrant (dated August 3, 2010), filed March 13, 2012 (Doc. 27-3); MSJ ¶ 7, at 6-7 (setting forth this fact). Judge Ortega directed Butler to specify the amount of bail at $5,000.00, plus a $100.00 warrant fee, for a total cash-only bond of $5,100.00. See Ortega Aff. ¶ 8, at 2; Butler Aff. ¶ 6, at 2; Complaint ¶ 10, at 2; MSJ ¶ 7, at 7 (setting forth this fact). The amount was set based on the serious nature of the crime and to make the warrant executable anywhere in the State. See Ortega Aff. ¶ 8, at 2; MSJ ¶ 7, at 7 (setting forth this fact). Pursuant to N.M.R.A. 6-207(A), only a magistrate judge has the authority to issue a bench warrant. See Ortega Aff. ¶ 9, at 3; MSJ ¶ 8, at 7 (setting forth this fact). At all relevant times Butler was employed as a court clerk with the Taos County Magistrate Court and her duties involved, if one of the magistrate judges so instructs her, the preparation of draft bench warrants,. See Butler Aff. ¶¶ 4-5, at 1; MSJ ¶ 9, at 7 (setting forth this fact). The magistrate judges will review the bench warrant for possible issuance. See Butler Aff. ¶ 5, at 1; MSJ ¶ 9, at 7 (setting forth this fact). At the time she drafted the Bench Warrant, Butler did not know and had not heard of a person named Jeremy Martinez. See Butler Aff. ¶ 7, at 2; MSJ ¶ 10, at 7 (setting forth this fact).

Every time the Taos County Magistrate Court opens a new criminal case, a court clerk enters the defendant's name, social security number, and birth date into the court's database to confirm the data. See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 7 (setting forth this fact). In the case of Jeremy Martinez, another unidentified clerk performed this initial entry. See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 7 (setting forth this fact). When the other court clerk initially inputted the data, there was "No Match Found," which led the clerk to re-enter the name Jeremy Martinez and date of birth, August 4, 1973. See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 7-8 (setting forth this fact). The database returned a match for J. Martinez, born on August 4, 1973, with social security number XXX-XX-2990.

See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 8 (setting forth this fact). This social security number was different from the original XXX-XX-7041 social security number. See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 8 (setting forth this fact). The J. Martinez match had a Taos-area address and a prior criminal charge from Taos County Magistrate Court in 2001. See Butler Aff. ¶ 9, at 2; MSJ ¶ 11, at 8 (setting forth this fact). The information for J. Martinez remained part of the magistrate court's database for State v. Martinez, No. M-53-VR-201000039. See Butler Aff. ¶ 9, at 3; MSJ ¶ 11, at 8 (setting forth this fact). In preparing the Bench Warrant, Butler used the information from the Court database, and she believed that J. Martinez' social security number and date of birth were Jeremy Martinez' accurate information. See Butler Aff. ¶ 10, at 3; MSJ ¶ 12, at 8 (setting forth this fact). At the time she prepared the Bench Warrant, Butler was unaware that she was using the wrong data. See Butler Aff. ¶ 13, at 3; MSJ ¶ 13, at 8 (setting forth this fact). Butler had no reason to suspect that the information in the database was incorrect and her mistake, and then her use of J. Martinez' information for the Bench Warrant rather than Jeremy Martinez' information, was inadvertent or unintentional. See Butler Aff. ¶ 13, at 3; MSJ ¶ 13, at 8 (setting forth this fact).

After Butler prepared the Bench Warrant, Judge Ortega reviewed the document, including the subject's name, court docket number, the charges, and the amount of the bond. See Butler Aff. ¶ 11, at 3; Ortega Aff. ¶ 8, at 2-3; MSJ ¶ 14, at 8 (setting forth this fact). Judge Ortega then signed and issued the Bench Warrant. See Ortega Aff. ¶ 8, at 3; Butler Aff. ¶ 11, at 3; Bench Warrant at 5; MSJ ¶ 14, at 8 (setting forth this fact). He instructed Butler to file the Bench Warrant and have it entered into Taos Central Dispatch's law enforcement information system. See Butler Aff. ¶ 11, at 3; Ortega Aff. ¶ 10, at 3; MSJ ¶ 14, at 8-9 (setting forth this fact). On August 19, 2010, Ben A. Mondragon, an attorney, filed an entry of appearance in State v. Martinez, No. M-53-VR-201000039. See Ortega Aff. ¶ 10, at 3; State v. Martinez, No. M.-53-VR-201000039, Entry of

Appearance at 9 (dated August 19, 2010), filed March 13, 2012 (Doc. 27-2); MSJ ¶ 15, at 9 (setting forth this fact).  On August 25, 2010, Judge Ortega issued and caused to be filed a notice of hearing in the case, setting an arraignment for September 2, 2010.  See Ortega Aff. ¶ 10, at 3; State v. Martinez, No. M-53-VR-201000039, Notice of Hearing at 10 (dated August 25, 2010), filed March 13, 2012 (Doc. 27-2); MSJ ¶ 16, at 9 (setting forth this fact).  On September 2, 2010, Jeremy Martinez, Mr. Mondragon, and Assistant District Attorney Michael Prinz, appeared for the arraignment.  See Ortega Aff. ¶ 17, at 9.  At the arraignment, it became apparent that the Jeremy Martinez, who was appearing, did not have the same date of birth, social security number, or address as the Jeremy Martinez against whom the Criminal Complaint, Criminal Summons, and Bench Warrant were issued.  See Ortega Aff. ¶ 11, at 3; MSJ ¶ 17, at 9 (setting forth this fact).  Judge Ortega took Jeremy Martinez' plea of not guilty and set an unsecured appearance bond in the amount of $3,000.00, which Jeremy Martinez thereupon executed.  See Ortega Aff. ¶ 11, at 3; State v. Martinez, No. M-53-VR-201000039, Arraignment Sheet at 11 (dated September 2, 2010), filed March 13, 2012 (Doc. 27-2); State v. Martinez, No. M-53-VR-201000039, Release Order and Bond at 12 (dated September 2, 2010), filed March 13, 2012 (Doc. 27-2); MSJ ¶ 17, at 9 (setting forth this fact).  Judge Ortega released J. Martinez with conditions.  See Ortega Aff. ¶ 11, at 3; Release Order and Bond at 12; MSJ ¶ 17, at 9 (setting forth this fact).  After the arraignment, Judge Ortega issued a Warrant Recall of the Bench Warrant.  See Ortega Aff. ¶ 12, at 3; State v. Martinez, No. M-53-VR-201000039, Warrant Recall at 14 (dated September 3, 2010), filed March 3, 2012 (Doc. 27-2); MSJ ¶ 18, at 9 (setting forth this fact).  Butler was not involved in the recall of the Bench Warrant. See Butler Aff. ¶ 14, at 4; MSJ ¶ 19, at 9 (setting forth this fact).

On September 18, 2010, the Espanola Police arrested J. Martinez on the Bench Warrant; when Judge Ortega learned of his arrest, Judge Ortega ordered that J. Martinez be released from

custody.  See Ortega Aff. ¶ 13, at 4; State v. Martinez, No. M-53-VR-201000039, Bench Warrant at 15 (executed September 18, 2010), filed March 13, 2012 (Doc. 27-2)("Executed Bench Warrant"); State v. Martinez, No. M-53-VR-201000039, Release Order and Bond at 16 (dated September 20, 2010), filed March 13, 2012 (Doc. 27-2)("Second Release Order and Bond"); Complaint ¶ 5, at 1; MSJ ¶ 20, at 10 (setting forth this fact).

## PROCEDURAL BACKGROUND

On October 11, 2011, J. Martinez filed his Complaint in the Eighth Judicial District Court. See Complaint at 1.  Count I is against Lucero, an administrative assistant to Assistant District Attorney Michael Prinz, and brought pursuant to "[42] U.S.C. § 1983 and § 1988, the Fifth Amendment (Due process), the Eighth Amendment (Cruel and unusual punishment), and the Fourteenth Amendment (Due Process and Equal protection) to the United States Constitution." Complaint ¶¶ 1, 3, at 1.  J. Martinez asserts that Lucero prepared the Bench Warrant and that, instead of using Jeremy Martinez' social security number, she used J. Martinez' social security number. See Complaint ¶ 11, at 2.  He alleges that she caused the Bench Warrant to be issued against him and not against Jeremy Martinez.  See Complaint ¶ 11, at 2.  J. Martinez asserts that he had nothing to do with the events in the magistrate-court case and that Lucero deprived him of his constitutional rights.  See Complaint ¶¶ 12, 14, at 2.  In Count II, J. Martinez asserts that he was falsely imprisoned, and that Lucero "caused the personal freedom or freedom of locomotion of Plaintiff to be interfered with by causing his incarceration for three days on a warrant that was not lawfully or intended to be issued against him."  Complaint ¶ 18, at 2.  On November 11, 2011, Lucero filed her Notice of Removal and removed the case to federal court.  See Doc. 1.

On November 16, 2011, Lucero filed her Answer to Complaint.  See Doc. 4 ("Lucero Answer").  In her Answer, Lucero admits that Jeremy Martinez, as described in the Criminal

-7-

Complaint, and J. Martinez are different persons.  <u>See</u> Answer ¶ 6, at 1-2.  She asserts that the magistrate court, and not anyone in the Office of the Eighth Judicial District Attorney, prepared the Bench Warrant.  <u>See</u> Answer ¶ 11, at 2.  Lucero also asserts the following affirmative defenses: (i) that one or more counts fail to state a claim upon which relief can be granted; (ii) that she is entitled to absolute immunity; (iii) that she is entitled to qualified immunity; (iv) that third parties caused J. Martinez' injuries; (v) that J. Martinez failed to mitigate his damages; and (vi) that J. Martinez failed to adequately investigate the facts before filing his Complaint.  <u>See</u> Answer at 3.

On January 6, 2012, J. Martinez filed his Amended Complaint for Violation of Civil Rights.  <u>See</u> Doc. 9 ("Amended Complaint").  His Amended Complaint is against three Defendants: (i) Lucero; (ii) Shirley Lujan, an employee of the Town of Taos Police Department, who work as Superintendent of Dispatch; and (iii) Butler.  <u>See</u> Amended Complaint ¶¶ 3-5, at 1.  Count I asserts a violation of constitutional rights against Lucero.  <u>See</u> Amended Complaint at 3.  The allegations against Lucero in the Amended Complaint largely remain the same as those in the original Complaint.  <u>See</u> Amended Complaint ¶¶ 16-25, at 3-4.  Alternate Count I asserts a violation of constitutional rights against Butler and alleges that Butler prepared the Bench Warrant.  <u>See</u> Amended Complaint ¶ 27, at 4.  J. Martinez asserts that he had nothing to do with the magistrate court case.  <u>See</u> Amended Complaint ¶ 30, at 4.  He alleges that Butler was required to accurately prepare bench warrants, that it was an administrative act, and that Butler deprived him of his constitutional rights.  <u>See</u> Amended Complaint ¶¶ 32-35, at 4.  Count II alleges a violation of constitutional rights against Lujan only.  <u>See</u> Amended Complaint at 5.  J. Martinez asserts that the Taos Police Department did not clear the Bench Warrant from the National Crime Information Center ("NCIC") system, causing it to remain in the nationwide system as active.  <u>See</u> Amended Complaint ¶ 40, at 5.  He alleges that Lujan was responsible for removing warrants from the NCIC

system and that her failure to remove the Bench Warrant from the system resulted in J. Martinez'
arrest.  See Amended Complaint ¶¶ 41-42, at 5.  J. Martinez asserts that Lujan's conduct was under
the color of state law and deprived him of his constitutional rights.  See Amended Complaint ¶¶ 43-
44, at 5.  Count III restates J. Martinez' false imprisonment allegations.  See Amended Complaint
¶¶ 47-49, at 6.

On January 20, 2012, Lucero filed Jennifer Lucero's Answer to Amended Complaint.
See Doc. 10 ("Lucero's Amended Answer").  Lucero denies that she was the person that prepared
the Bench Warrant and asserts that the magistrate court, and not any person in the Office of the
Eighth Judicial District Attorney, prepared the Bench Warrant.  See Lucero Amended Answer ¶ 18,
at 3.  Lucero asserts the same affirmative defenses as in her Answer.  See Lucero Amended Answer
5-6.  On January 20, 2012, Lucero filed her Motion for Summary Judgment (Absolute Immunity and
Qualified Immunity), which addressed Counts I and III of the Amended Complaint.  See Doc. 11,
at 1.  On March 2, 2012, Butler filed Jacqueline Butler's Answer to Amended Complaint.  See Doc.
19 ("Butler Answer").  Butler asserts that the magistrate court judge issues bench warrants and that
she works under the judges' direction.  See Butler Answer ¶ 5, at 1.  She admits that J. Martinez and
Jeremy Martinez, charged in the Criminal Complaint, are different persons, and have different social
security numbers.  See Butler Answer ¶ 11, at 2.  Butler also admits that she prepared the Bench
Warrant, but assert that she did so under the magistrate judge's direction and control.  See Butler
Answer ¶ 29, at 3.  Butler asserts several affirmative defenses, including that: (i) one or more counts
fail to state a claim upon which relief can be granted; (ii) she is entitled to absolute immunity;
(iii) she is entitled to qualified immunity; (iv) third parties caused J. Martinez' injuries; and (v) J.
Martinez failed to mitigate his damages.  See Butler Answer at 5.

On March 5, 2012, the parties filed the Stipulation of Dismissal with Prejudice (Jennifer

Lucero).  See Doc. 21 ("Lucero Stipulation").  Pursuant to rule 41(a)(1)(A)(ii) of the Federal Rules

of Civil Procedure, the parties "stipulate to the dismissal with prejudice of all claims and the entirety

of the Amended Complaint for Violation of Civil Rights (Doc. No. 9) as to Jennifer Lucero only."

Lucero Stipulation at 1 (emphasis original).  Lucero contemporaneously withdrew her motion for

summary judgment.  See Notice of Withdrawal of Motion for Summary Judgment, filed March 5,

2012 (Doc. 22).  On March 9, 2012, Lujan filed Shirley Lujan's Answer to Amended Complaint.

See Doc. 25 ("Lujan Answer").  Lujan admits that the Taos Police Department was responsible for

the original charges against Jeremy Martinez, but states that she has no knowledge whether the

Bench Warrant was recalled and that it is not part of her job to clear warrants from the NCIC system.

See Lujan Answer ¶ 40, at 6.  She admits that her actions were under the color of state law, but

denies that her action were as stated in the Amended Complaint or that she violated J. Martinez'

rights.  See Lujan Answer ¶ 43, at 6.  Lujan asserts the following affirmative defenses: (i) one or

more counts fail to state a claim upon which relief can be granted; (ii) she is entitled to absolute

immunity; (iii) she is entitled to qualified immunity; (iv) third parties caused J. Martinez' injuries;

and (v) the Amended Complaint is brought in bad faith and without merit.  See Lujan Answer at 7.

On April 2, 2012, the parties filed a Stipulation of Dismissal (Shirley Lujan).  See Doc. 34 ("Lujan

Stipulation").  Pursuant to rule 41(a)(1)(A)(ii), the parties "stipulate to the dismissal with prejudice

of all claims and the entirety of the Amended Complaint for Violation of Civil Rights (Doc. No. 9)

as to Defendant Shirley Lujan only."  Lujan Stipulation at 1.

   Butler moves the Court, pursuant to rule 56, to enter summary judgment in her favor as to

"Alternative Count I" and Count III of the Amended Complaint for Violation of Civil Rights.  MSJ

at 1.  She asserts that there is no genuine issue as to any material fact, and that the undisputed

evidence demonstrates that she is entitled to absolute immunity, qualified immunity, and judgment

as a matter of law.  See MSJ at 1.  Butler first argues that she is entitled to absolute immunity.

See MSJ at 10.  She asserts that, since medieval times, absolute judicial immunity has existed at

common law, and that state judges are absolutely immune from liability for their judicial acts.

See MSJ at 10 (citing Forrester v. White, 484 U.S. 219, 225 (1988); Briscoe v. LaHue, 460 U.S. 325,

334 (1983)).  Butler contends that only two circumstances exist in which absolute immunity does

not bar claims for money damages against judges: (i) where the action is  "nonjudicial"; and (ii)

where the action, although judicial in nature, is "taken in the complete absence of all jurisdiction."

MSJ at 10-11 (quoting Mireles v. Waco, 502 U.S. 9, 11-12 (1991)).  She argues that absolute

judicial immunity bars lawsuits seeking damages where the judicial acts are erroneous, done

maliciously, and/or in excess of the court's authority.  See MSJ at 11 (citing Stump v. Sparkman,

435 U.S. 349, 355-56 (1978); Christensen v. Ward, 916 F.2d 1462, 1473 (10th Cir. 1990).  Butler

asserts that, in addition to judges, absolute judicial immunity applies to court employees or agents

who assist with a court's orders or whose duties have an integral relation to the judicial process.  See

MSJ at 11 (citing Whitesel v. Sengenberger, 222 F.3d 861 (10th Cir. 2000); Sindram v. Suda, 986

F.2d 1459 (D.C. Cir. 1993); Valdez v. City & Cnty. of Denver, 878 F.2d 1285 (10th Cir. 1989);

Pomerantz v. L.A. Cnty., 674 F.2d 1288 (9th Cir. 1982); Tripati v. INS, 784 F.2d 345, 347-48 (10th

Cir. 1986); Wiggins v. N.M. State Supreme Court Clerk, 664 F.2d 812, 815 (10th Cir. 1981)).  She

contends that, because absolute immunity "is justified and defined by the function it protects and

serves, not by the person to whom it attaches," Whitesel v. Sengenberger, 222 F.3d at 867, numerous

circuits have clothed the clerks of federal courts and of state courts with absolute immunity for acts

that are integrally related to judicial duties and functions, see MSJ at 12 (citing Lundahl v. Zimmer,

296 F.3d 936, 939 (10th Cir. 2002); Wiggins v. N.M. State Supreme Court Clerk, 664 F.2d at 815).

        Butler argues that the Taos County Magistrate Court is part of the judiciary and that

-11-

magistrates are judges.  See MSJ at 13 (citing N.M.S.A. 1978, §§ 35-1-1, -32).  She asserts that there is "perhaps no more quintessentially judicial act than a court's authority to issue a bench warrant commanding the arrest of a person who fails to appear before the court as ordered."  MSJ at 13.  She contends that the Supreme Court of New Mexico has codified the power of magistrate judges to issue bench warrants.  See MSJ at 14 (citing N.M.R.A. 6-207).  Butler asserts that, had Judge Ortega personally written the Bench Warrant, an act within his jurisdiction, he would have been immune from liability for such an error.  See MSJ at 14 (citing Stump v. Sparkman, 435 U.S. at 355-56; Christensen v. Ward, 916 F.2d at 1473).  She argues that, when the magistrate court clerk assists the court at the magistrate's instruction, a magistrate court clerk is similarly entitled to absolute immunity.

Butler next asserts that, even if the Court finds that absolute immunity does not apply, qualified immunity applies to bar recovery.  See MSJ at 14.  She states that, when a defendant asserts qualified immunity, the burden shifts to the plaintiff to come forward and show: (i) that the defendant's conduct violated the law; and (ii) that the law was clearly established when the violation occurred.  See MSJ at 14 (citing Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993); Hidahl v. Gilpin Cnty. Dep't of Soc. Servs., 938 F.2d 1150, 1155 (10th Cir. 1991); Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645-46 (10th Cir. 1988)).  She argues that she is entitled to qualified immunity, because: (i) there is no liability under 42 U.S.C. § 1983 based on mistake, error, or negligence; and (ii) there is no clearly established law that the unintentional, inadvertent use of incorrect information in drafting a warrant may violate a person's constitutional rights.  See MSJ at 16.  She contends that the Supreme Court of the United States has, "[f]rom the outset of the qualified immunity doctrine, . . . allowed 'ample room' for 'mistaken judgment' and 'reasonable error' by government officials."  MSJ at 16 (citing Cnty. of Sacramento, 523 U.S. 833,

849 (1998); Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  She further asserts that there can be no 42 U.S.C. § 1983 liability for inadvertent mistakes, errors or negligence.  See MSJ at 16 (citing Daniels v. Williams, 474 U.S. 327, 328 (1986); Franks v. Delaware, 438 U.S. 154, 171 (1978)). Butler argues that the undisputed evidence demonstrates that her use of the name shown on the court records, and a social security number and date of birth of a different person who had the same name, was unintentional and nothing more than innocent error.  See MSJ at 16-17.  She also contends that there is no clearly established case law with "factual correspondence" to the situation before the Court.  MSJ at 17 (citing Hope v. Pelzer, 536 U.S. 730, 739-740 (2002)).

On March 28, 2012, J. Martinez filed his Memorandum in Opposition to Defendant Butler's Motion for Summary Judgment and Request that the Court Refuse to Rule on Motion Under Rule 56(f).  See Doc. 28.  Later that same day, J. Martinez filed his Amended Memorandum in Opposition to Defendant Butler's Motion for Summary Judgment and Request that the Court Refuse to Rule on Motion Under Rule 56(f).  See Doc. 30 ("Response").  J. Martinez asserts that the magistrate court case "is a comedy of errors," and that he spent "three days in jail on a warrant not intended for him and which had been recalled."  Response at 2.  He represents that he is in no position to contest any of Butler's undisputed facts, because he has not yet performed any discovery. See Response at 3.  He argues that Butler failed to make a prima-facie case entitling her to summary judgment on the issues of absolute or qualified immunity.  See Response at 3.  J. Martinez contends that the disputed issue of fact for trial is whether Butler's conduct was reckless and/or unreasonable. See Response at 3.

With respect to absolute immunity, J. Martinez asserts that the Butler and Ortega affidavits fail "to make any claim that Judge Ortega ordered her to prepare a bench warrant against the Plaintiff or that he ordered her to substitute Plaintiff's social security number in place of 'Jeremy

Martinez,' the real person who the warrant was intended for." Response at 3.  He argues that Butler has presented no evidence that she was acting pursuant to a specific order from Judge Ortega. See Response at 3-4.  J. Martinez contends that Butler "took it upon herself, through reckless malfeasance, to prepare a bench warrant for the arrest of the Plaintiff." Response at 4.  He asserts that implicit in Butler's Affidavit is the fact that, while she entered the Bench Warrant in the law enforcement information system, she did not remove the warrant when it was recalled. See Response at 4.  He argues that this failure resulted in his arrest.  See Response at 4.  J. Martinez further asserts that absolute immunity is determined solely on the basis of the defendant's status and whether she acted in the course of that duty.  See Response at 4.  He contends that "it is clear that Defendant Butler did not act in the course of her duties," and that, "[i]n preparing the bench warrant against the Plaintiff, she acted outside of her duties and outside of the order of Judge Ortega, who ordered her to prepare a bench warrant for the arrest of 'Jeremy Martinez.'" Response at 4.  J. Martinez also argues that "[a]bsolute immunity does not apply to duties which are administrative." Response at 4 (citing Achterhof v. Selvaggio, 886 F.2d 826 (6th Cir. 1989)).  He contends that the "requesting of warrants and their issuance are administrative" acts, such that absolute immunity does not apply.  Response at 4 (citing Imbler v. Pachtman, 424 U.S. 409, 427, 430 (1976); Krohn v. United States, 742 F.2d 24 (1st Cir. 1984)).  Finally, J. Martinez argues that the magistrate court had no jurisdiction over him and that, because absolute immunity does not apply to actions taken in the absence of jurisdiction, absolute immunity cannot shield Butler from liability.  See Response at 4-5.

J. Martinez then argues that qualified immunity does not apply to shield Butler from liability. He asserts that the qualified-immunity defense "differs from absolute immunity in its more intimate relationship with the merits."  Response at 5.  He asserts that qualified immunity cannot be decided without a complete determination of the nature of the wrongful act and the law applicable at the time

it was committed.  See Response at 5 (citing Kenyatta v. Moore, 744 F.2d 1179).    J. Martinez

contends that there was no probable cause to issue the bench warrant for his arrest and that, at the

time that he was arrested, the law was clearly settled that arresting a citizen on a bench warrant

where no probable cause existed violated the constitutional rights of a citizen.  See Response at 6

(citing Tennessee v. Garner, 471 U.S. 1, 7 (1985); Adams v. Metiva, 31 F.3d 375 (6th Cir. 1994)).

He asserts that the United States Court of Appeals for the Tenth Circuit, in Snell v. Tunnell, 920

F.2d 673 (10th Cir. 1990), held that a public official is not entitled to qualified immunity where she

knew or should have known that her acts would cause others to deprive the plaintiff of his

constitutional rights.  See Response at 6.  He further asserts that Butler should have reasonably

known that causing "a bench warrant to be issued for the Plaintiff's arrest would result in the

Plaintiff's arrest."  Response at 6.   J. Martinez admits that "qualified immunity does not apply to

subjectively reckless or grossly negligent" conduct, but asserts that the Court should compare the

"objective reasonableness" of the conduct of which J. Martinez' complains with the state of the law

at the time of the alleged violation.  Response at 6 (citing Cnty. of Sacramento v. Lewis, 523 U.S.

at 833; Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  He contends that the jury, and not the

Court, is in the best position to determine the reasonableness of Butler's conduct.  See Response at

6-7 (citing Sloman v. Tadlock, 21 F.3d 1121 (9th Cir. 1994); DeVargas v. Mason & Hanger-Silas

Mason Co., 844 F.2d 714, 719 (10th Cir. 1988); Wright v. South Ark. Reg'l Health Ctr., 800 F.2d

199, 203 (8th Cir. 1986)).  He asserts that an issue of fact exists whether Butler was reckless or

objectively unreasonable.  See Response at 7. J. Martinez argues that the facts that Butler describes

"show a formal or informal system premised on the idea that there is only one of each named

person[] in the world."  Response at 7.  He contends that the "unnamed clerk cut corners at the

expense of the Plaintiff" and further asserts that Butler "unreasonably took it on faith that there is

only one 'Jeremy Martinez' in the world."  Response at 7.  He argues that, "[w]ith a shoddy and sloppy system whereby the clerk cuts corners by cutting and pasting inform from their files," it is "unreasonable to believe that such a system is accurate."  Response at 7.

J. Martinez represents that "doing things the old fashioned way" -- taking the relevant information directly from the criminal complaint -- does not take more time and is more reliable than trusting the modern computer database.  Response at 7-8.  He argues that this case is not one of "simply mailing a summons to the wrong person," but "something more serious, the issuance of a bench warrant."  Response at 8.  He asserts that Butler was cognizant of the magistrate-court system's failings and unreasonably trusted its accuracy.  See Response at 8.  J. Martinez contends that failing to obtain the warrant information directly from the Criminal Complaint or to double check the information is reckless conduct, and, at a minimum, raises an issue of material fact whether Butler's conduct was reckless.  See Response at 8.

In the alternative, J. Martinez requests that the Court permit him, pursuant to rule 56(f),[3] to conduct limited discovery.  See Response at 9.  The particular issues that J. Martinez would like to investigate are: (i) whether the use of the magistrate court's database has resulted in other, similar errors, which would indicate a systemic problem; (ii) if this was not a one-time occurrence, what Butler's knowledge of any other occurrences was; (iii) if Butler knew or should have known that this process is how the magistrate court handles data entry, whether her reliance on that system was unreasonable or reckless; and (iv) whether Butler notified any law-enforcement entity once the Bench Warrant was recalled.  See Response at 9.  J. Martinez' attorney, Samuel M. Herrera, attached

---

[3]Although the Response argues that the Court should permit discovery under rule 56(f), the Federal Rules of Civil Procedure have been amended, and the relief that J. Martinez seeks is now available under rule 56(d).

his affidavit to the Response.  See Response at 10 (citing Affidavit of Samuel M. Herrera Under Rule 56(f), filed March 28, 2012 (Doc. 28-1)("Herrera Aff.")).  Mr. Herrera asserts that his experience with the Taos County Magistrate Court indicates that there is a formal or informal procedure whereby cutting and pasting is used and encouraged.  See Response at 10 (citing Herrera Aff. at 1.).  J. Martinez admits that, "[i]f it is mere negligence as a matter of law and therefore not a constitutional violation, then the Court is obligated to dismiss this matter."  Response at 10 (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).  He asserts, however, that, "[i]f the facts show what Plaintiff's counsel believes they prove and those facts raise an issue of recklessness, then the Court should allow Plaintiff to undertake this limited discovery."  Response at 10 (citing Cnty. of Sacramento v. Lewis, 523 U.S. at 833).  He further asserts that it appears that Butler may not have removed the Bench Warrant from the NCIC system "as she should have done" and that the Court should allow discovery on this issue to avoid dismissing Butler only to have another claim added against her.  Response at 10-11.

On April 26, 2012, Butler filed her Reply in Support of Motion for Summary Judgment (Absolute Immunity and Qualified Immunity).  See Doc. 38 ("Reply").  Butler notes that J. Martinez affirmatively stated that he does not dispute any of the material facts.  See Reply at 1.  Butler argues that J. Martinez does not dispute that the issuance of a bench warrant is judicial function.  See Reply at 3.  She asserts that, if a function is judicial in nature, then, no matter who exercises the function, absolute immunity bars the suit.  See Reply at 3-4.  She contends that J. Martinez ignores the argument that, if Judge Ortega had drafted the Bench Warrant, absolute immunity would protect him from suit.  See Reply at 4.  Butler argues that the cases which J. Martinez cites, for the proposition that the requesting and issuance of warrants is an administrative function, do not support his proposition and are not pertinent.  See Reply at 4.  With respect to J. Martinez' argument that the

magistrate court had no jurisdiction over him, Butler asserts that he is confusing jurisdiction over the person with jurisdiction over the subject matter and that the absolute-immunity-jurisdictional inquiry is whether there is jurisdiction over the subject matter.  See Reply at 6 (citing Christensen v. Ward, 916 F.2d at 1473; Van Sickle v. Holloway, 791 F.2d 1462, 1435 (10th Cir. 1986)).  She contends that the Taos County Magistrate Court had subject-matter jurisdiction.  See Reply at 6-7 (citing N.M.S.A. 1978, § 35-3-4(A); N.M.R.A. 6-207; Criminal Complaint at 5-6).  With respect to J. Martinez' qualified immunity arguments, Butler argues that her conduct was, at worst, negligent.  See Reply at 8.  She asserts that J. Martinez offers no evidence that her conduct was "reckless or objectively unreasonable."  Reply at 8.  She further asserts that J. Martinez' arguments regarding the formal or informal practices for preparing warrants speak to mere negligence, rather than to recklessness.  See Reply at 8.  Butler contends that J. Martinez "fails to meet his burden to identify 'clearly established law' with 'factual correspondence' to these facts."  Reply at 8.  She asserts that the only case which comes close to establishing such law is McMurry v. Sheahan, 927 F.Supp. 1082 (N.D. Ill. 1996), in which the United States District Court for the Northern District of Illinois held that a chief court clerk was not entitled to qualified immunity where she had personal, actual knowledge that the computerized system, which she maintained, resulted in hundreds of quashed arrest warrants remaining in the system.  See Reply at 9.  She notes that McMurry v. Sheahan was in a different procedural posture and is not considered clearly established law for the purposes of qualified immunity.  See Reply at 9.  Butler argues that in Newton v. Buckley, 127 F.3d 1109, 1997 WL 642085 (10th Cir. 1997)(unpublished table decision), established that a court clerk is entitled to absolute immunity for preparing a bench warrant which contained factual errors and was issued using procedural irregularities.

With respect to J. Martinez' request for discovery, Butler reiterates that J. Martinez has failed

to meet his burden of identifying an alleged constitutional violation based on clearly established law. See Reply at 10.  She asserts that the Court's discretion under rule 56(d) is restricted, because the "liberal application of Rule 56[d] should not be allowed to subvert the goals" of qualified immunity. Reply at 10 (citing Lewis v. City of Fort Collins, 903 F.2d 752, 758 (10th Cir. 1990); Jones v. City & Cnty. of Denver, 854 F.2d at 1211).  Butler contends that, to justify discovery, J. Martinez must "demonstrate how discovery will enable [him] to rebut [her] showing of objective reasonableness." Reply at 11.  She argues that it is insufficient for the party opposing summary judgment to assert that additional discovery is necessary to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands.  See Reply at 11 (citing Lewis v. City of Fort Collins, 903 F.2d at 758).  She further asserts that the request must be particularized, and explain what specific documents or depositions will rebut the evidence supporting qualified immunity. See Reply at 11 (citing Lewis v. City of Fort Collins, 903 F.2d at 759).  Butler contends that J. Martinez argues that he needs to discover whether the error which occurred was a one-time occurrence, but fails to identify any cases in which such information would be a basis for denying absolute or qualified immunity.  See Reply at 12.

On May 4, 2012, the Court held a hearing.  Butler argued that the undisputed law and well-settled law entitles her to summary judge on either absolute or qualified immunity.  See Transcript of Hearing at 2:14-19 (May 4, 2012)(Dickman)("Tr.").[4]  She recounted the facts of the case as stated in the MSJ.  See Tr. at 3:2-7:1 (Dickman).  Butler then argued that she qualifies for absolute immunity.  See Tr. at 7:3-4 (Dickman).  She asserted that absolute immunity is a sweeping doctrine and that a hallmark of the doctrine is that it protect functions not persons.  See Tr. at 7:4-18

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers

(Dickman). She represented that one of the leading absolute immunity cases is Stump v. Sparkman, where the Supreme Court decided that a judge was entitled to immunity where he permitted a child to be sterilized without her knowledge and without appointing a guardian, as the law requires. See Tr. at 7:19-8:24 (Dickman). Butler argued that the Supreme Court held that "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when has acted in the 'clear absence of all jurisdiction.'" Tr. at 8:21-4 (Dickman). She asserted that the Tenth Circuit has interpreted Stump v. Sparkman to mean that the function has to be judicial and that the court has to have subject-matter jurisdiction over the action. See Tr. at 9:5-12 (Dickman). She noted that, in Stump v. Sparkman, the Supreme Court found that the judge acted illegitimately and in violation of procedural due process, but still held that absolute immunity applied. See Tr. at 9:13-20 (Dickman). Butler pointed the Court to Newton v. Buckley, in which the Tenth Circuit held that a court clerk was entitled to absolute immunity where she prepared a bench warrant, but made several errors in the process. See Tr. at 9:21-10:22 (Dickman). She argued that, there, the Tenth Circuit held that, because a clerk's issuance of a warrant involves a quasi-judicial act, it carries with it the protections of absolute immunity. See Tr. at 10:23-11:5 (Dickman). She also directed the Court's attention to Whitesel v. Sengenberger. See Tr. at 11:14-17 (Dickman). Butler asserted that, in that case, a pretrial services officer issued a temporary restraining order and went beyond his authority to impose material conditions. See Tr. at 11:19-24 (Dickman). She argued that the Tenth Circuit found that some circuits, including the Tenth Circuit, had held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity. See Tr. at 12:19-22 (Dickman). Butler asserted that absolute immunity is a well-established doctrine and that it has been applied to court clerks for decades. See Tr. at 12:23-13:7 (Dickman). She argued that the issuance of a bench

warrant is a quintessentially judicial act.  See Tr. at 13:8-12 (Dickman).  She further asserted that misdemeanors and petty misdemeanors, such as the crime of which Jeremy Martinez was accused, are within the Taos County Magistrate Court's subject-matter jurisdiction.  See Tr. at 13:14-19 (Dickman).  Butler contended that, although she made a mistake with some tragic consequences, she is entitled to absolute immunity for the error in the Bench Warrant.  See Tr. at 13:20-22 (Dickman).

Butler then argued that, in the alternative, she is entitled to qualified immunity.  See Tr. at 13:23-14:1 (Dickman).  She emphasized that the law regarding qualified immunity is well-established and long-standing.  See Tr. at 14:2-3 (Dickman).  She asserted that the Supreme Court has held that there can be no liability under 42 U.S.C. § 1983 for negligence, innocent mistakes, or reasonable errors, even if there is a reckless disregard for life.  See Tr. at 14:4-9 (Dickman).  Butler contended that there is no clearly established law that would hold an individual acting under the color of state law liable for this kind of error.  See Tr. at 14:10-15:3 (Dickman).  She argued that there is no case notifying her that what she did would violate the United States Constitution.  See Tr. at 15:3-7 (Dickman).  She then turned to J. Martinez' argument that the Court should permit discovery, and asserted that the qualified immunity doctrine not only protects against liability but protects against the burdens of discovery.  See Tr. at 15:8-17 (Dickman).  Butler argued that the Tenth Circuit has held that rule 56(f) cannot be used to subvert the goals of qualified immunity or to subject a person who has not violated clearly established law to discovery.  See Tr. at 15:18-16:4 (Dickman).  She asserted that J. Martinez wants to discover whether her reliance on the computer database was unreasonable or reckless, but contended that he does not point to cases which would suggest her conduct violates clearly established law.  See Tr. at 16:4-14 (Dickman).  She contended that J. Martinez fails to meet his burden under rule 56(f).  See Tr. at 16:14-17 (Dickman).

J. Martinez argued that judicial acts are entitled to absolute immunity, but that administrative

acts are not.  See Tr. at 16:21-17:1 (Herrera).  He asserted that Butler's conduct was an administrative act and not a judicial act.  See Tr. at 17:8-10 (Herrera).  He contended that, if a person writes a novel, but gives it to a secretary to type, then the person is still the novelist and the secretary is still the typist.  See Tr. at 17:10-14 (Herrera).  J. Martinez distinguished this case from Newton v. Buckley, because, in that case, the clerk was authorized to issue a warrant whereas Butler simply typed the Bench Warrant.  See Tr. at 17:14-21 (Herrera).  He then pointed the Court to Williams v. Wood, 612 F.2d 982 (5th Cir. 1980), where a clerk was supposed to type an order and notify the parties, but made an error.  See Tr. at 17:22-18:8 (Herrera).  He asserted that the United States Court of Appeals for the Fifth Circuit held that absolute immunity did not bar the case, because the typing and issuance of orders and notices is an administrative task and not a judicial act.  See Tr. at 18:9-18 (Herrera).  He contended that Butler did not issue the order, but merely typed it.  See Tr. at 18:18-20 (Herrera).  J. Martinez noted that, in Newton v. Buckley, the clerk issued the bench warrant and argued that issuance is the operative word.  See Tr. at 18:21-19:8 (Herrera).  The Court asked whether a clerk could ever technically issue a bench warrant.  See Tr. at 19:15-17 (Court).  J. Martinez responded that, in Utah, clerks are authorized to issue bench warrants.  See Tr. at 19:18-20:2 (Herrera).  He asserted that, ultimately, the Court must decide whether Butler's conduct was administrative or judicial.  See Tr. at 20:12-17 (Herrera).  He argued that Butler did not commit mere negligence, did not transpose the social security numbers, or make some other innocent mistake.  See Tr. at 20:17-20 (Herrera).  J. Martinez contended that Butler looked in the computer database and stuck the information for the first "Jeremy Martinez" on the list into the warrant.  Tr. at 20:20-25 (Herrera).  He asserted that he needs discovery to determine whether that is the procedure at the Taos County Magistrate Court, and argued that she cannot rely on a dysfunctional system and then say she made an innocent mistake.  See Tr. at 20:25-21:6 (Herrera).

-22-

With respect to the facts of the case, J. Martinez asserted that, in the second bullet point of the Reply, Butler makes a statement that was different from Butler's affidavit.  See Tr. at 21:7-11 (Herrera).  J. Martinez represented that, in the Reply, Butler asserts that the Bench Warrant was incorrect, because the charging document was incorrect and that another clerk discovered the error. See Tr. at 21:11-16 (Herrera).[5]  He argued that such information was not included in Butler's affidavit, and that what Butler's affidavit says is that they put the name in the system and could not find him, so they searched his name and inserted the social security number of the first "Jeremy Martinez" whose name popped up.  Tr. at 21:21-22:1 (Herrera).  J. Martinez contended that such an act is not an innocent mistake, because Butler knew or should have known that the information was likely to be inaccurate.  See Tr. at 22:2-5 (Herrera).  He asserted that he needs discovery to determine whether this process is the Taos County Magistrate Court's modus operandi.  See Tr. at 22:5-12 (Herrera).  He argued that Butler asserts that the Taos Police Department was notified that the Bench Warrant was recalled, but that there is nothing in the record showing that they were notified.  See Tr. at 22:19-23:7 (Herrera).

J. Martinez contended that, because absolute immunity does not apply, this case boils down to whether qualified immunity applies.  See Tr. at 23:17-18 (Herrera).  He pointed the Court to McMurry v. Sheahan and asserted that, when a person is working with a dysfunctional system, that individual cannot attribute errors to good-faith mistake.  See Tr. at 23:19-22 (Herrera).  The Court then asked what it should do with the qualified-immunity question given the undisputed facts about Butler's intent.  See Tr. at 23:24-24:5 (Court).  J. Martinez responded that he can establish a 42

---

[5]J. Martinez' argument is incorrect.  In her affidavit, Butler also asserts that, to the best of her knowledge, another court clerk entered the information and discovered the error in the Criminal Complaint, which led to the search for "Jeremy Martinez" and the entry of J. Martinez' information. Butler Aff. ¶ 9, at 2.

U.S.C. § 1983 claim against Butler, because Butler's affidavit states that she relied on the computer database and that her affidavit is inconsistent with a good-faith mistake.  See Tr. at 24:6-11 (Herrera).  He argued that, if there was only one Jeremy Martinez in the world, the system might be accurate, but that, because that situation does not reflect reality, she cannot rely on that system.  See Tr. at 24:12-17 (Herrera).  He asserted that it is inconsistent to say that she acted in good faith when she used a system that is prone to errors.  See Tr. at 24:17-19 (Herrera).  The Court then asked on what J. Martinez needs discovery before the Court can rule on the MSJ.  See Tr. at 24:20-23 (Court).  He responded that he seeks discovery on whether this process is the Taos County Magistrate Court's modus operandi.  See Tr. at 25:4-8 (Herrera).  J. Martinez noted that, in Mr. Herrera's affidavit, he attested that he had another client who was the victim of the same circumstances.  See Tr. at 25:8-15 (Herrera).  He contended that, if this occurred more than once, it raises a genuine issue of material fact whether Butler was reckless.  See Tr. at 25:15-18 (Herrera).  He argued that, in McMurry v. Sheahan, the Northern District of Illinois found that relying on a dysfunctional system precludes qualified immunity.  See Tr. at 25:19-26:2 (Herrera).  The Court asked what such discovery would entail and whether it would require only a deposition of Butler.  See Tr. at 26:12-13 (Herrera).  J. Martinez responded that the only issue is Butler's knowledge of the system and practices.  See Tr. at 26:14-23 (Herrera).  The Court asked whether his discovery would be limited to asking Butler what she does when she searches for a name, and whether she chooses the first name on the list or looks at all of the people named Jeremy Martinez before finishing a warrant.  See Tr. at 26:24-27:3 (Court).  He asserted that his understanding is that Butler did not perform the initial search and that another clerk inputted the information in the system.  See Tr. at 27:4-8 (Herrera).  He stated that he needs to ask Butler whether the other clerk would have selected the first Jeremy Martinez and that, if she says she does not know what the other clerk would have done, he does not know whom the

other clerk is.  See Tr. at 27:8-13 (Herrera).  The Court asked what evidence shows that Butler was recklessly indifferent.  See Tr. at 27:17-20 (Court).  J. Martinez asserted that what is he knows is that: (i) if the clerks do not have the correct information, they search their file and select the first Jeremy Martinez; and (ii) errors have resulted in previous cases, and that the clerks and Taos County Magistrate Court have been notified that the wrong people are being arrested.  See Tr. at 27:21-28:13 (Herrera).  J. Martinez represented that he believes Butler will tell him that this error was not a one-time occurrence and that, because the clerks are very busy, they cut corners.  See Tr. at 28:14-18 (Herrera).

        Butler asserted that bullet point three is accurate and that it comports with the two affidavits.  See Tr. at 29:3-6 (Dickman).  She explained that the clerk took the information from the Criminal Complaint -- the name, date of birth, and social security number -- which did not produce a match.  See Tr. at 30:9-13 (Dickman).  She asserted that the clerk then removed the social security number, and the system returned the address and social security number for J. Martinez, who had a prior criminal record.  See Tr. at 30:13-16 (Dickman).  She argued that the clerk likely believed that the social security number was incorrect, which it was, and that it was not a matter of randomly selecting the first Jeremy Martinez whose name appeared.  See Tr. at 30:17-24 (Dickman).  She asserted that, even if that was the Taos County Magistrate Court's modus operandi, there are no cases from the Supreme Court, Tenth Circuit, or Supreme Court of New Mexico which would suggest that her conduct violated 42 U.S.C. § 1983.  See Tr. at 30:23-31:11 (Dickman).  With respect to Williams v. Wood, Butler argued that the case is thirty-two years old, from the Fifth Circuit, arose in the context of a rule 12(b)(6) motion to dismiss, and was not an absolute-immunity case.  See Tr. at 33:5-34:2 (Dickman).  She also noted that McMurry v. Sheahan was a rule 12(b)(6) case, that the case was from the Northern District of Illinois, and that it has never been followed.

<u>See</u> Tr. at 34:2-19 (Dickman).  Butler argued that this case did not involve a computer malfunction, but an innocent mistake in judgment.  <u>See</u> Tr. at 34:20-35:14 (Dickman).  She asserted that her conduct was a judicial act and that administrative acts occur when a court is awarding a contract or something similar.  <u>See</u> Tr. at 35:18-25 (Dickman).  The Court asked what Butler thought of the distinction between issuing and typing a warrant.  <u>See</u> Tr. at 36:1-5 (Court).  Butler responded that it was a distinction without a difference, because it is clear that, had Judge Ortega typed the warrant, he would be entitled to absolute immunity.  <u>See</u> Tr. at 36:6-37:4 (Dickman).  She asserted that the Tenth Circuit, in <u>Wiggins v. N.M. State Supreme Court Clerk</u>, has noted that judges could not efficiently function without their staffs and that, if court staff perform judicial functions, they are entitled to absolute immunity.  <u>See</u> Tr. at 37:4-19 (Dickman).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir.

1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving

party may not rest on its pleadings but must set forth specific facts showing that there is a genuine

issue for trial as to those dispositive matters for which it carries the burden of proof." (internal

quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely

disputed must support the assertion by . . . . citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a

properly supported motion for summary judgment to "rest on mere allegations or denials of his [or

her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of

Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th

Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in his complaint, but must respond with specific facts

showing the existence of a genuine factual issue to be tried.'").  Nor can a party "avoid summary

judgment by repeating conclusory opinions, allegations unsupported by specific facts, or

speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June

2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d

1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot

rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment

in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL

2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

        To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING RULE 56(d)

Rule 56(d) of the Federal Rules of Civil Procedure states:

**(d)      When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by

affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)**    defer considering the motion or deny it;

**(2)**    allow time to obtain affidavits or declarations or to take discovery; or

**(3)**    issue any other appropriate order.

Fed. R. Civ. P. 56(d).[6]  The Tenth Circuit reviews a district court's denial of a rule 56(d) motion for abuse of discretion.  See Comm. for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant."  Comm. for First Amendment v. Campbell, 962 F.2d at 1522 (citing Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832 (10th Cir. 1986)).  "Unless dilatory or lacking in merit," a party's rule 56(d) application "should be liberally treated."  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993)(internal quotation marks omitted).  "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000)(internal quotation marks omitted).  "Rule 56(f) does not require, however, that summary judgment not be entered until discovery is complete."  Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., Nos. 02-1146, 03-1185, 2007 WL 2461629, at *3 (D.N.M. June 5, 2007)(Browning, J.)(citing Price v. W. Res., Inc., 232 F.3d 779, 784 (10th Cir. 2000)).

To invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit, see Pasternak v. Lear Petroleum Exploration Inc., 790 F.2d at 832-33; (ii) identify the probable facts not available,

---

[6] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee notes (2010 amendments).

their relevance, and what steps have been taken to obtain those facts, <u>see</u> <u>Comm. for the First</u> <u>Amendment v. Campbell</u>, 962 F.2d at 1522; (iii) explain why facts precluding summary judgment cannot be presented, <u>see</u> <u>Comm. for the First Amendment v. Campbell</u>, 962 F.2d at 1522; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment, <u>see</u> <u>Comm. for the First Amendment v. Campbell</u>, 962 F.2d at 1522. "Rule 56([d]) may not be invoked based solely upon the assertion that discovery is incomplete or that the specific facts necessary to oppose summary judgment are unavailable." <u>Schaefer v.</u> <u>Antill</u>, No. 06-0460, 2007 WL 709046, at *9 (D.N.M. Jan. 31, 2007)(Browning, J.). "Rule 56([d]) is not a license for a fishing expedition." <u>Lewis v. Ft. Collins</u>, 903 F.2d 752, 759 (10th Cir. 1990).

## RELEVANT LAW REGARDING ABSOLUTE IMMUNITY

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56 (1978). That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors." <u>Stump v. Sparkman</u>, 435 U.S. at 359.

The Supreme Court has emphasized that a judge's immunity from § 1983 liability "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, <u>i.e.</u>, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12 (1991)(citations omitted). The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights." <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967), <u>overruled in part on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800

(1982).

The Tenth Circuit has also recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006)(citing Butz v. Economou, 438 U.S. 478, 514 (1978)). For an official at an administrative hearing to enjoy absolute immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." Guttman v. Khalsa, 446 F.3d at 1033 (quoting Horwitz v. State Bd. of Med. Examiners of State of Colo., 822 F.2d 1508, 1513 (10th Cir. 1987))(internal quotation marks omitted).

In Guttman v. Khalsa, a doctor who suffered from depression and post-traumatic stress disorder had appeared before the Impaired Physicians Committee of the New Mexico Board of Medical Examiners to respond to a series of complaints about his professional conduct. See 446 F.3d at 1030. The Committee in Guttman v. Khalsa issued a "Notice of Contemplated Action and Order of Summary Suspension" of the doctor's medical license based on alleged mental illness and lying to the Committee. 446 F.3d at 1030. The New Mexico Board of Medical Examiners then held a hearing, during which one of the defendants acted as Administrative Prosecutor. See Guttman v. Khalsa 446 F.3d at 1030. The New Mexico Board of Medical Examiners in Guttman v. Khalsa revoked the doctor's medical license pursuant to its statutory authority to do so. See 446 F.3d at 1030.

The doctor in Guttman v. Khalsa appealed the decision to the Seventh Judicial District of New Mexico. See 446 F.3d at 1030. The Seventh Judicial District of New Mexico denied the appeal, and the doctor then appealed to the Court of Appeals of New Mexico. See Guttman v.

Khalsa, 446 F.3d at 1030.  After the Court of Appeals of New Mexico affirmed, the doctor filed a petition for certiorari with the Supreme Court of New Mexico.  See Guttman v. Khalsa, 446 F.3d at 1030.  Before the Supreme Court of New Mexico could act on the petition, the doctor filed a lawsuit in federal court, alleging, among other things, violations of his constitutional rights.  See Guttman v. Khalsa, 446 F.3d at 1030.

The Tenth Circuit in Guttman v. Khalsa held that the Rooker–Feldman doctrine[7] did not bar the doctor's federal lawsuit, because the state-court lawsuit was not final.  See 446 F.3d at 1032.  The Tenth Circuit found, however, that the Administrative Prosecutor and the individual who presided over the three-day hearing in front of the New Mexico Board of Medical Examiners enjoyed absolute immunity.  See Guttman v. Khalsa, 446 F.3d at 1032.  The basis for the hearing officer's immunity in Guttman v. Khalsa was that he had served a quasi-judicial function.  See 446 F.3d at 1032.

The Tenth Circuit in Guttman v. Khalsa also relied on an earlier case: Horwitz v. State Board of Medical Examiners of State of Colorado, 822 F.2d 1508.  In Horwitz v. State Board of Medical Examiners of State of Colorado, the Tenth Circuit concluded that members of the State Board of Medical Examiners for the State of Colorado enjoyed absolute immunity for actions it took in filing a formal complaint against a doctor, and in temporarily suspending his right to practice medicine pending investigations and hearings.  See 822 F.2d at 1510, 1515.  The Tenth Circuit in Horwitz v. State Board of Medical Examiners of State of Colorado reasoned that the defendant Board members

---

[7]The Rooker-Feldman doctrine derives from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Tenth Circuit has recognized that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments." Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1142-43 (10th Cir. 2006)(citations omitted).

were performing adjudicatory and prosecutorial functions.  See 822 F.2d at 1515.  The Tenth Circuit

in Horwitz v. State Board of Medical Examiners of State of Colorado also noted:

> There exists a strong need to insure that individual Board members perform their
> functions for the public good without harassment or intimidation. There exist
> adequate due process safeguards under Colorado law to protect against
> unconstitutional conduct without reliance upon private damages lawsuits. It is
> important to insulate Board members from political influences in meeting their
> adjudicatory responsibilities in the adversarial setting involving licensure to practice
> medicine.  Public policy requires that officials serving in such capacities be exempt
> from personal liability.

822 F.2d at 1515.  Finally, the Tenth Circuit pointed out the Board members' functions, observing

that Board members

> serve in the prosecutorial role in that they, among other things, initiate complaints,
> start hearings, make investigations, take evidence, and issue subpoenas.  They also
> serve in the adjudicative role, as judges.  Thus, the Board duties are "functionally
> comparable" to a court of law.  And we are reminded that, with respect to immunity,
> we must include all acts of the official performing statutory duties as having "[m]ore
> or less connection with the general matters committed by law" to his station.

822 F.2d at 1515.

Although certain officers enjoy immunity from suit for acts taken in a quasi-judicial setting,

the Supreme Court has held that court reporters do not enjoy such immunity. Rejecting a court

reporter's claim of absolute immunity, the Supreme Court stated: "We are also unpersuaded by the

contention that our functional approach to immunity . . . requires that absolute immunity be extended

to court reporters because they are part of the judicial function."  Antoine v. Byers & Anderson, Inc.,

508 U.S. 429, 435 (1993).  Rather, in the Supreme Court's view:

> The doctrine of judicial immunity is supported by a long-settled understanding that the
> independent and impartial exercise of judgment vital to the judiciary might be
> impaired by exposure to potential damages liability.  Accordingly, the "touchstone"
> for the doctrine's applicability has been "performance of the function of resolving
> disputes between parties, or of authoritatively adjudicating private rights." [Burns
> v. Reed,] 500 U.S. [478,] 500 [(1991)] (Scalia, J., concurring in judgment in part and
> dissenting in part). When judicial immunity is extended to officials other than

-33-

> judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges -- that is, because they, too, "exercise a discretionary judgment" as a part of their function.  Imbler v. Pachtman, 424 U.S. [409] at 423, n. 20 [(1976) ].

Antoine v. Byers & Anderson, Inc., 508 U.S. at 435-36 (footnote omitted)(final two alterations in original).

In light of this understanding of judicial immunity, the Supreme Court found that the function that court reporters perform is not one that would lead to a grant of immunity.  See Antoine v. Byers & Anderson, Inc., 508 U.S. at 436.  The Supreme Court reasoned that court reporters "are afforded no discretion" in carrying out their duty and that they are "not absolutely immune because their duties are ministerial, not discretionary in nature."  Antoine v. Byers & Anderson, Inc., 508 U.S. at 436 (citations omitted)(internal quotation marks omitted).

The Court has also drawn distinctions between when a person is acting in a judicial role, such that they are entitled to quasi-judicial immunity,[8] and when a person in a quasi-judicial setting plays a merely ministerial role.  See Duprey v. Twelfth Judicial Dist. Court, 760 F.Supp.2d 1180, 1204 (D.N.M. 2009)(Browning, J.).  In Duprey v. Twelfth Judicial District Court, the Court found that the state defendant who acted as chairperson of the judicial grievance board was entitled to absolute immunity, because his function was similar to that of an administrative law judge in a quasi-judicial setting.  See 760 F.Supp.2d at 1204.  The Court found that the director of human resources for the  New Mexico Administrative Office of the Courts was not entitled to absolute immunity, because her role was ministerial and mechanical.  See 760 F.Supp.2d at 1204.  In analyzing each defendant's function, the Court focused on participation in the deliberative process

---

[8]Quasi-judicial immunity affords "non-judicial officers the same absolute immunity enjoyed by judges when a claim is based on duties performed in furtherance fo the judicial process."  Henshaw v. Bliss, 421 F.App'x 870, 871 (10th Cir. 2011).

and the exercise of independent judgment.   See Duprey v. Twelfth Judicial Dist. Court, 760 F.Supp.2d at 1205.  The Court determined that, because the human resources director played a ministerial role and did not act at the direction of a judge, she was not entitled to judicial immunity. See Duprey v. Twelfth Judicial Dist. Court, 760 F.Supp.2d at 1208 ("An individual whose job at a judicial proceeding is to run a tape recorder is not one who needs to be able to act according to her own convictions.").  See also Braverman v. New Mexico, No. 11-0829, 2011 WL 6013587, at *20 (D.N.M. Oct. 19, 2011)(Browning, J.)(finding that judicial immunity probably protected a state judge and special master from suit when denying a motion for a temporary restraining order).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"   Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)).  "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).

Qualified immunity also shields officers who have "reasonable, but mistaken beliefs" and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205 (2001). When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

### 1.    Procedural Approach to Qualified Immunity.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense. In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." 555 U.S. at 236. The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz will often be beneficial. See Pearson v. Callahan 555 U.S. at 241. In rejecting a mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise." Pearson v. Callahan, 555 U.S. at 237. The Supreme Court also recognized that a mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." Pearson v. Callahan, 555 U.S. at 241 (alterations omitted)(internal quotation marks omitted). Once the plaintiff has

established the inference that the defendant's conduct violated a clearly established constitutional

right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d

867, 870-71 (10th Cir. 1993).

The Supreme Court recognized seven circumstances where district courts should proceed

directly to and "should address only" the clearly established prong of the qualified immunity

analysis:

> [W]hen (1) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (2) "it appears that the question will soon be decided by a higher court"; (3) deciding the constitutional question requires "an uncertain interpretation of state law"; (4) "qualified immunity is asserted at the pleading stage" and "the precise factual basis for the . . . claim . . . may be hard to identify"; (5) tackling the first element "may create a risk of bad decisionmaking" due to inadequate briefing; (6) discussing both elements risks "bad decisionmaking" because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (7) the doctrine of "constitutional avoidance" suggests the wisdom of passing on the first constitutional question because "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."

Kerns v. Bader, 663 F.3d 1173, 1180-81 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. at

236-42).  Regarding the last of these seven circumstances, the Supreme Court has clarified that

courts may "avoid avoidance" and address the first prong before the second prong in cases involving

a recurring fact pattern where guidance on the constitutionality of the challenged conduct is

necessary and the conduct is only likely to face challenges in the qualified-immunity context.

Camreta v. Greene, 131 S.Ct. 2020, 2031-32 & n.5 (2011).  See Kerns v. Bader, 663 F.3d at 1181.

"In general, courts should think hard, and then think hard again, before turning small cases into large

ones."  Camreta v. Greene, 131 S.Ct. at 2032.  Accord Kerns v. Bader, 663 F.3d at 1181.  The

Supreme Court has also recently emphasized in the qualified immunity context: "Courts should

think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions

of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"

Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011).  The Tenth Circuit will normally remand a case

to the district court for further consideration when the district court has given cursory treatment to

the qualified immunity issue.  See Kerns v. Bader, 663 F.3d at 1182.

### 2.    Clearly Established Rights in the Qualified-Immunity Analysis.

In evaluating whether a right was clearly established, a district court considers whether the

right was sufficiently clear that a reasonable government employee in the defendant's shoes would

understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist.,

473 F.3d 1323, 1327 (10th Cir. 2007).  A clearly established right is generally defined as a right so

thoroughly developed and consistently recognized under the law of the jurisdiction as to be

"indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth

Circuit decision on point, or the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir.

2001).  See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  On the other

hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision

declaring the "very action in question . . . unlawful."  Anderson v. Creighton, 483 U.S. 635, 640

(1987).  "In determining whether the right was 'clearly established,' a court assesses the objective

legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours

of the right [were] sufficiently clear that a reasonable official would understand that what he is doing

violates that right.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir.

2001)(quoting Saucier v. Katz, 533 U.S. at 202).  A court should inquire "whether the law put

officials on fair notice that the described conduct was unconstitutional" rather than engage in "a

scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Supreme Court further clarified what a plaintiff must show to satisfy the clearly established requirement in Ashcroft v. al-Kidd. The Supreme Court held that, while a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. at 2083. "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Ashcroft v. al-Kidd, 131 S.Ct. at 2084. The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. at 205. The Tenth Circuit, in Kerns v. Bader, focused on the Supreme Court's language in Ashcroft v. al-Kidd in its analysis of qualified immunity. In that case, which dealt with a search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification." Kerns v. Bader, 663 F.3d at 1183 (emphasis added). The Tenth Circuit reiterated that "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing law," but held that, where distinctions "might make a constitutional difference," the law is not clearly established. Kerns v. Bader, 663 F.3d at 1187 (emphasis in original). Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established. In

-39-

Casey v. City of Federal Heights, 509 F.3d 1278 (10th Cir. 2007), the Tenth Circuit re-emphasized its sliding scale approach: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." 509 F.3d at 1284 (citing Pierce v. Gilchrist, 359 F.3d at 1298). Thus, "when an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law." Casey v. City of Fed. Heights, 509 F.3d at 1284. Furthermore, "general statements of law are not inherently incapable of giving fair and clear warning . . . ." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

### 3.    Factual Disputes in the Qualified-Immunity Analysis.

In determining whether the plaintiff has met his or her burden of establishing a constitutional violation that was clearly established, a court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378-80 (2007); Riggins v. Goodman, 572 F.3d 1107 (noting that the Tenth Circuit "accept[s] the facts as the plaintiff alleges them").  In Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), the Tenth Circuit explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312.  "The Tenth Circuit, in Rhoads v. Miller, explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F.Supp.2d 1222, 1249 (D.N.M. 2010)(Browning,

J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistence or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F.App'x 289, 291-92 (10th Cir. 2009)(unpublished)(internal quotation marks omitted). See Lymon v. Aramark Corp., 728 F.Supp.2d at 1249-50 (quoting Rhoads v. Miller, 352 F.App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court" before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts")).

## ANALYSIS

The Court will grant the MSJ. Butler is entitled to absolute immunity, because she acted at

Judge Ortega's direction.  Butler is also entitled to qualified immunity, because J. Martinez did not establish that her conduct violates clearly established law.  Furthermore, because the discovery that J. Martinez requests is not relevant to the absolute-immunity or clearly-established-law inquiries, the Court will deny his request for discovery pursuant to rule 56(d).

I.      **THE UNDISPUTED EVIDENCE SHOWS THAT BUTLER IS ENTITLED TO ABSOLUTE IMMUNITY.**

Butler moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment in her favor as to "Alternative Count I" and Count III of the Amended Complaint for Violation of Civil Rights.  MSJ at 1.   Butler argues that the Taos County Magistrate Court is part of the judicial system and that magistrates are judges.  See MSJ at 13 (citing N.M.S.A. 1978, §§ 35-1-1, 35-1-32).  She asserts that there is "perhaps no more quintessentially judicial act than a court's authority to issue a bench warrant commanding the arrest of a person who fails to appear before the court as ordered." MSJ at 13.  Butler argues that, when the magistrate court clerk assists the court at the magistrate's instruction, a magistrate court clerk is similarly entitled to absolute immunity.  See MSJ at 14.  J. Martinez asserts that the Butler and Ortega affidavits fail "to make any claim that Judge Ortega ordered her to prepare a bench warrant against the Plaintiff or that he ordered her to substitute Plaintiff's social security number in place of 'Jeremy Martinez,' the real person who the warrant was intended for."  Response at 3.  He contends that "it is clear that Defendant Butler did not act in the course of her duties," and that, "[i]n preparing the bench warrant against the Plaintiff, she acted outside of her duties and outside of the order of Judge Ortega, who ordered her to prepare a bench warrant for the arrest of 'Jeremy Martinez.'" Response at 4.  J. Martinez also argues that "[a]bsolute immunity does not apply to duties which are administrative." Response at 4.  He contends that the "requesting of warrants and their issuance are administrative"

acts, such that absolute immunity does not apply.  Response at 4.

In, Stein v. Disciplinary Board of Supreme Court of New Mexico, 520 F.3d 1183 (10th Cir. 2008), the Tenth Circuit discussed whether its opinion in Whitesel v. Sengenberger was reconcilable with the Supreme Court's holding in Antoine v. Byers & Anderson, Inc.  See Stein v. Disciplinary Bd. of Supreme Court of N.M., 520 F.3d at 1191.   There, the defendant asserted that she was "acting as the clerk of the court when she undertook the challenged actions" -- failing to timely serve a copy of disciplinary committee's opinion.  Stein v. Disciplinary Bd. of Supreme Court of N.M., 520 F.3d at 1191.  The Tenth Circuit noted that its decision in Whitesel v. Sengenberger, to the extent that it held that a non-judicial officer is entitled to absolute immunity for duties that have an integral relationship with the judicial process, "appears inconsistent with the Supreme Court's opinion in Antoine" and that one could read Whitesel v. Sengenberger narrowly as protecting only quasi-judicial acts.  Stein v. Disciplinary Bd. of Supreme Court of N.M, 520 F.3d at 1192.  It held that, in Whitesel v. Sengenberger, issuing a temporary restraining order was "indisputably a judicial act," because it "authoritatively adjudicated private rights."  Stein v. Disciplinary Bd. of Supreme Court of N.M, 520 F.3d at 1192.  The Tenth Circuit held, however, that there "remains the possibility of absolute immunity for a clerk 'acting under the command of a court decree or explicit instructions from a judge."  Stein v. Disciplinary Bd. of Supreme Court of N.M, 520 F.3d at 1192 (citing Henriksen v. Bentley, 644 F.2d 852, 856 (10th Cir. 1981)).

In several decisions, issued after the Supreme Court decided Antoine v. Byers & Anderson, Inc. in 1993, the Tenth Circuit and other circuits have held that, where a court clerk acts at the judge's direction, the court clerk is entitled to absolute immunity.  In Trackwell v. United States Government, 472 F.3d 1242 (10th Cir. 2007), the Tenth Circuit held that the Clerk of the Supreme Court of the United States was entitled to absolute immunity where the clerk was "being asked to

perform a judicial function by the Supreme Court -- the filing of an application."  472 F.3d at 1247.

The Tenth Circuit held that, "[i]n the context of judicial immunity from claims for damages, when

a court clerk assists a court or a judge in the discharge of judicial functions, the clerk is considered

the functional equivalent of the judge and enjoys derivative immunity."  Trackwell v. United States

Gov't, 472 F.3d at 1247.  In Spalsbury v. Sisson, 250 F.App'x 238 (10th Cir. 2007)(unpublished),

the Tenth Circuit held that, even if the judicial defendants' conduct violated Colorado law, the state

judges were entitled to absolute immunity and that such immunity also extended to the clerk.

See 250 F.App'x at 248.  The Tenth Circuit held that the court clerk was entitled to absolute

immunity, because she was "accused of no more than assisting Judges Schultz and Hiatt in the

discharge of their judicial functions."  Spalsbury v. Sisson, 250 F.App'x at 248 (citing Trackwell

v. United States Gov't, 472 F.3d at 1247).

    The United States Court of Appeals for the Fifth Circuit has likewise held, in several cases,

that court clerks who act at the direction of a judge are entitled to absolute immunity.  In Dunn v.

Kennedy, 2008 WL 162855 (5th Cir. Jan. 17, 2008)(unpublished), the Fifth Circuit held that judicial

immunity "also extends to other court personnel to the extent that they were acting at the judge's

direction."  2008 WL 162855, at *2.  The Fifth Circuit found that, because the allegations were that

the clerk "removed Dunn from the court appointment list at the direction of Judge Kennedy," the

clerk was entitled to absolute immunity.  See Dunn v. Kennedy, 2008 WL 162855, at *2.  In Kastner

v. Lawrence, 390 F.App'x 311 (5th Cir. 2010)(per curiam)(unpublished), the Fifth Circuit held that

the challenged action involved the "issuance of arrest warrants, which is within the judge's judicial

activity," and rejected the contention that the judge was acting in an "administrative, legislative, or

executive" capacity.  390 F.App'x at 315.  It also rejected the argument that the judge acted outside

of his jurisdiction because the plaintiff did not commit the offense and because certain procedures

were not followed.  See Kastner v. Lawrence, 390 F.App'x at 315.  The Fifth Circuit then turned to

the plaintiff's claims against the court clerk.  It found that clerks have the power to "perform the

ministerial task of issuing process at the judge's behest," and that, "[b]ecause the clerks issued the

warrant at the direction of the justice of the peace, they are also protected by absolute immunity."

Kastner v. Lawrence, 390 F.App'x at 315.  In Guccione v. Parish of Jefferson, 382 F.App'x 357 (5th

Cir. 2010)(per curiam)(unpublished), the Fifth Circuit held that, because the "remaining defendants

in this lawsuit are the employees of the Louisiana Fifth Circuit Court of Appeal who acted pursuant

to the procedures allegedly implemented by the judges" and were "only acting at the express

direction of the judges," those employees were entitled to absolute immunity.  382 F.App'x at 359.

In Ceprano v. Southampton Justice Court, 404 F.App'x 537 (2d Cir. 2011)(unpublished), the United

States Court of Appeals for the Second Circuit held that the "authorizing of a bench warrant was

clearly a judicial act" and that, even the judge may have lacked personal jurisdiction, the warrant

was not issued in the absence of all jurisdiction because the court possessed subject-matter

jurisdiction.  See 404 F.App'x at 539.  The Second Circuit also held that, "because the authorizing

of a bench warrant is a judicial function, the court clerk is also entitled to absolute immunity for

issuing the warrant."  Ceprano v. Southampton Justice Court, 404 F.App'x at 540.  In Davenport v.

Illinois, 295 F.App'x 810 (7th Cir. 2008)(unpublished), the United States Court of Appeals for the

Seventh Circuit held that "judicial clerks enjoy absolute immunity when they take administrative

acts at the direction of a judicial officer."  295 F.App'x at 812.

J. Martinez asserts that Butler has presented no evidence that she was acting pursuant to

Judge Ortega's specific order.  See Response at 3-4.  In her affidavit, however, Butler asserts that

"Magistrate Judge Ortega instructed me to prepare a draft Bench Warrant for his review in the case

of State v. Jeremy Martinez, Case No. M-53-VR-2010-39, commanding the arrest of a person named

Jeremy Martinez for failure to appear at the time and place ordered by the Court." Butler Aff. ¶ 6, at 2. Judge Ortega also attests that he "expressly instructed Jacqueline Butler . . . to prepare for my review a draft Bench Warrant commanding the arrest of Jeremy Martinez for his failure to appear." Ortega Aff. ¶ 8, at 2. After reviewing the document, Judge Ortega asserts that he then "instructed Ms. Butler to file it and have it entered into the law enforcement information system." Ortega Aff. ¶ 8, at 2. Judges enjoy "absolute judicial immunity even if 'flawed by the commission of grave procedural errors, and regardless of a judge's 'motive or good faith,' or whether 'the judge is accused of acting maliciously or corruptly.'" Giron v. Chaparro, 167 F.App'x 716, 719 (10th Cir. 2006)(unpublished). When a judge directs a clerk to perform a judicial act, the clerk enjoys the same absolute immunity. See Trackwell v. United States Gov't, 472 F.3d at 1247. Butler prepared the Bench Warrant for Judge Ortega's review and then filed it. The authorization of a bench warrant is a judicial act. See Ceprano v. Southampton Justice Court, 404 F.App'x at 539; Newton v. Buckley, 1997 WL 642085, at *3-4. If Judge Ortega had prepared and signed the Bench Warrant, there is no question that Judge Ortega would be entitled to absolute immunity. When a court clerk acts at a judge's direction, it does not matter that the preparation of the bench warrant may be a ministerial task. The Fifth and Seventh Circuits have recognized that, when judicial clerks perform even ministerial tasks at the judge's direction, they are entitled to absolute immunity. See Kastner v. Lawrence, 390 F.App'x at 315 (finding that court clerks have the power to "perform the ministerial task of issuing process at the judge's behest," and that, "[b]ecause the clerks issued the warrant at the direction of the justice of the peace, they are also protected by absolute immunity"); Davenport v. Illinois, 295 F.App'x at 812 ("[J]udicial clerks enjoy absolute immunity when they take administrative acts at the direction of a judicial officer."). Court clerks are necessary to the performance of many judicial tasks. They should not be stripped of absolute immunity's protection

for performing tasks that, if done by a judge, would be protected.  The Court thus concludes that Butler is entitled to absolute immunity.

At the hearing, J. Martinez argued that there was a difference between issuing a bench warrant and the preparation of a bench warrant.  See Tr. at 18:21-19:8 (Herrera).  Many of the cases that the Court found addressed the "issuance" of a bench warrant.  There is, however, nothing in those cases to suggest that those court clerks did any more than Butler.  Butler prepared and filed the Bench Warrant at Judge Ortega's instruction.  In Ceprano v. Southampton Justice Court, the Second Circuit noted that the judge "authorized" the bench warrant while the court clerk "issued" the bench warrant.  404 F.App'x at 540.  While the Second Circuit does not detail what tasks the judge performed versus what tasks the court clerk performed, it appears reasonable to the Court that the clerk provided much the same assistance in that case as Butler did here.  In Kastner v. Lawrence, the Fifth Circuit found that the judge determines probable cause for an arrest and Texas court clerks perform "the ministerial process at the judge's behest."  390 F.App'x at 315.  Again, it seems unlikely, if the judge is determining whether there is probable cause, that the clerk in that case performed any functions beyond what Butler did here.  J. Martinez cites a Fifth Circuit case from 1980, Williams v. Wood, which he asserts establishes that the typing and issuance of orders and notices is an administrative task and not a judicial act.  See Tr. at 18:9-18 (Herrera).  That case is not inconsistent, however, with the Court's finding that Butler is entitled to absolute immunity or the Fifth Circuit's holding in Kastner v. Lawrence.  In Williams v. Wood, the Fifth Circuit recognized that clerks are entitled to immunity for "clerical actions explicitly commanded by a court decree or by the judge's instructions," even though it held that "routine duty of court clerks does not fall within the narrow exception."  612 F.3d at 985.  Butler's conduct, because it was at Judge Ortega's express command, thus fits within the range of conduct which the Fifth Circuit found

satisfied the requirements of absolute immunity in <u>Williams v. Wood</u>.  Like the defendant in <u>Spalsbury v. Sisson</u>, whom the Tenth Circuit found entitled to absolute immunity, Butler did "no more than assist[]" Judge Ortega.  250 F.App'x at 248.

J. Martinez also argues that Judge Ortega lacked jurisdiction over him.  The Fifth Circuit rejected this argument in <u>Kastner v. Lawrence</u>.  It found that, because the justice of the peace courts have subject matter jurisdiction over misdemeanor offenses, the judge did not act in the complete absence of all jurisdiction.  <u>See</u> 390 F.App'x at 315.  The Second Circuit similarly rejected this argument in <u>Ceprano v. Southampton Justice Court</u>.  It found that, because the judge had subject matter jurisdiction over misdemeanors, it was irrelevant that the court did not have personal jurisdiction over the plaintiff and that the judge did not act in the absence of all jurisdiction.  <u>See</u> 404 F.App'x at 539.  Under N.M.S.A. 1978, § 35-3-4, magistrates "have jurisdiction in all cases of misdemeanors and petty misdemeanors, including offenses and complaints under ordinances of a county." N.M.S.A. § 35-3-4(A).  Jeremy Martinez was charged with: (i) aggravated battery against a household member pursuant to N.M.S.A. 1978, § 30-3-16(B), a misdemeanor; (ii) criminal damage to property (under $100.00) pursuant to N.M.S.A. 1978, § 30-15-1, a petty misdemeanor; and (iii) interference with communications pursuant to N.M.S.A. 1978, § 30-12-1, a misdemeanor. <u>See</u> Criminal Complaint at 4-5.  Accordingly, Judge Ortega did not act in the absence of all jurisdiction, because he had subject matter jurisdiction over the case.

Because Butler acted at Judge Ortega's direction of and assisted him in the performance of a judicial act, the Court finds that she is entitled to absolute immunity, and the Court will grant the MSJ on this basis.

## II.   <u>BUTLER IS ENTITLED TO QUALIFIED IMMUNITY</u>.

As an alternative to absolute immunity, Butler asserts that she is entitled to qualified

immunity.  See MSJ at 14.  She states that, when a defendant asserts qualified immunity, the burden

shifts to the plaintiff to come forward and show: (i) that the defendant's conduct violated the law;

and (ii) that the law was clearly established when the violation occurred.  See MSJ at 14 (citing

Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993); Hidahl v. Gilpin Cnty. Dep't of Soc.

Servs., 938 F.2d 1150, 1155 (10th Cir. 1991); Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,

847 F.2d 642, 645-46 (10th Cir. 1988)).  She argues that she is entitled to qualified immunity

because: (i) there is no liability under 42 U.S.C. § 1983 based on mistake, error, or negligence; and

(ii) there is no clearly established law that the unintentional, inadvertent use of incorrect information

in drafting a warrant may violate a person's constitutional rights.  See MSJ at 16.  J. Martinez then

argues that qualified immunity does not apply to shield Butler from liability.  He asserts that the

qualified-immunity defense "differs from absolute immunity in its more intimate relationship with

the merits."  Response at 5.  He asserts that qualified immunity cannot be decided without a

complete determination of the nature of the wrongful act and the law applicable at the time it was

committed.  See Response at 5 (citing Kenyatta v. Moore, 744 F.2d 1179).   J. Martinez contends

that there was no probable cause to issue the bench warrant for his arrest and that, at the time that

he was arrested, the law was clearly settled that arresting a citizen on a bench warrant where no

probable cause existed violated the constitutional rights of a citizen.  See Response at 6 (citing

Tennessee v. Garner, 471 U.S. at 7; Adams v. Metiva, 31 F.3d at 375).  He asserts that the Tenth

Circuit, in Snell v. Tunnell, held that a public official is not entitled to qualified immunity where she

knew or should have known that her acts would cause others to deprive the plaintiff of his

constitutional rights.  See Response at 6.  He further asserts that Butler should have reasonably

known that causing "a bench warrant to be issued for the Plaintiff's arrest would result in the

Plaintiff's arrest."  Response at 6.  He argues that, "[w]ith a shoddy and sloppy system whereby the

clerk cuts corners by cutting and pasting inform from their files," it is "unreasonable to believe that such a system is accurate."  Response at 7.

"Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, 2009 WL 1329834, at *10.  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 555 U.S. at 232.  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d at 1128.  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d at 1107.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  555 U.S. at 236.  In rejecting a mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise."  Pearson v. Callahan, 555 U.S. at 237.  The Supreme Court also recognized that a mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable."  Pearson v. Callahan, 555 U.S. at 241 (alterations omitted)(internal quotation marks omitted).

The Court begins with the clearly established prong of the qualified-immunity analysis,

because the parties have presented, and the Court has found, no clearly established law  from the Supreme Court or Tenth Circuit indicating that a constitutional violation occurred.  In his Amended Complaint, J. Martinez asserts that Butler deprived him of his constitutional rights, specifically, that she violated his right to be free from malicious prosecution, his due-process rights, and his right to be free from cruel and unusual punishment.  See Amended Complaint ¶¶ 35-36, at 4-5.  J. Martinez further asserts that, at the time he was arrested, the "law was clearly settled that arresting a citizen based on a bench warrant where no probable cause existed violated the constitutional rights of a citizen."  Response at 6 (citing Tennessee v. Garner, 471 U.S. at 7).  He argues that the Tenth Circuit, in Snell v. Tunnell, stated that "a reasonable public official would have known that using false information to secure an order to justify entry and search of a private home would violate the fourth amendment's proscription on unreasonable searches and seizures."  920 F.2d at 700.  J. Martinez contends that the facts Butler presents "show a formal or informal system premised on the idea that there is only one of each named persons in the world" and that it was "unreasonable to believe such a system is accurate."  Response at 7.

The Supreme Court has clarified what a plaintiff must show to satisfy the clearly established requirement in Ashcroft v. al-Kidd.  It held that, while a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. at 2083.  "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639.  "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."  Ashcroft v. al-Kidd, 131 S.Ct. at 2084.  Accordingly, J. Martinez' citation to Tennessee v. Garner does little to assist in

-51-

demonstrating that Butler's conduct violates clearly established law, because she did not arrest J. Martinez. <u>Tennessee v. Garner</u> establishes a general principle and is not similar to the facts of this case, where a court clerk, using a computer database, entered the social security number for a person with the same name as the defendant on a bench warrant.  J. Martinez' citation to <u>Snell v. Tunnell</u> is likewise unavailing, because, there, the social services officer knew that the allegations supporting a warrant were false.  <u>See</u> 920 F.2d at 698.  The Tenth Circuit stated that, for a theory of judicial deception to survive qualified immunity, there must be a "specific affirmative showing of dishonesty by the applicant." <u>Snell v. Tunnell</u>, 920 F.2d at 698.  In his Amended Complaint, J. Martinez does not allege that Butler's conduct was intentional or objectively unreasonable.  J. Martinez' argument, at the hearing and in his Response, focuses on whether Butler was objectively unreasonable in relying on the Taos County Magistrate Court computer database because it was a "shoddy and sloppy system whereby clerk[s] cut corners by cutting and pasting information from their filed." Response at 7.

The only factually similar case to which J. Martinez cites is from the Northern District of Illinois.  In <u>McMurry v. Sheahan</u>, the plaintiffs alleged that the clerks knew of the deficiencies in their computer system and did nothing to correct them, which led to the plaintiff's arrest.  <u>See</u> 927 F.Supp. at 1087.  The Honorable Robert W. Gettleman, United States District Judge for the Northern District of Illinois, found that the plaintiffs were not entitled to qualified immunity, because "[i]n allegedly allowing hundreds of people to be arrested on invalid warrants by failing to correct a computer system that was fraught with problems that were known to both Pucinski and Sheahan, Pucinski and Sheahan have violated plaintiff's clearly established right to be free from such an unlawful arrest." <u>McMurry v. Sheahan</u>, 927 F.Supp. at 1188.  The opinion contains no other discussion whether the alleged violation was clearly established and came before the Court's

influential qualified-immunity discussions in Ashcroft v. al-Kidd, Pearson v. Callahan, and Saucier v. Katz.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d at 923. Accord Medina v. City & Cnty. of Denver, 960 F.2d at 1498.  The Court could find no Supreme Court, Tenth Circuit, or clearly established authority from other circuits establishing that court personnel who rely on a computer system for information in a warrant violates a constitutional right such that they are not entitled to qualified immunity.  In a similar scenario, the United States Court of Appeals for the Third Circuit, in Noone v. City of Ocean City, 60 F.App'x 904 (3d Cir. 2003)(unpublished), found that police officers who relied on a computer generated arrest warrant for "James Noone," rather than his son "James Noone III," were entitled to qualified immunity.  60 F.App'x at 908.  The Third Circuit held that, because James Noone was arrested based on a warrant bearing his name and date of birth, it was reasonable to conclude that he was the proper individual sought.  See Noone v. City of Ocean City, 60 F.App'x at 908.  Similarly, here, the information that Butler entered contained the correct name and date of birth.  Furthermore, J. Martinez does not contest, and does not seek further discovery on, Butler's asserted facts that she had never heard of Jeremy Martinez and entered the information in the Bench Warrant believing it was true and correct. See Butler Aff. ¶¶ 7, 10, at 2-3.

When a defendant raises qualified immunity as a defense, the burden is on the plaintiff to demonstrate that the alleged constitutional violation was clearly established at the time it took place. J. Martinez has pointed the Court to no clearly established law with the requisite level of specificity. "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" James v.

Chavez, No. 09-0540, 2011 WL 5822726, at *44 (D.N.M. Nov. 9, 2011)(Browning, J.).  The Tenth

Circuit has held that, "[t]he more obviously egregious the conduct in light of prevailing

constitutional principles, the less specificity is required from prior case law to clearly establish the

violation."  James v. Chavez, 2011 WL 5822726, at *46.  J. Martinez has not established to the

requisite level of specificity that Butler's conduct violated clearly established law.  Accordingly, the

Court will grant the MSJ on this basis.

### III.   BECAUSE NO FURTHER DISCOVERY IS NECESSARY, THE COURT WILL DENY THE REQUEST PURSUANT TO RULE 56(d).

Rule 56(d) of the Federal Rules of Civil Procedure states:

(d)   **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1)   defer considering the motion or deny it;

(2)   allow time to obtain affidavits or declarations or to take discovery; or

(3)    issue any other appropriate order.

Fed. R. Civ. P. 56(d).[9]  "The general principle of Rule 56(f) is that summary judgment should be

refused where the nonmoving party has not had the opportunity to discover information that is

essential to his opposition."  Price v. W. Res., Inc., 232 F.3d at 783.  "Rule 56(f) does not require,

however, that summary judgment not be entered until discovery is complete."  Trujillo v. Bd. of

Educ. of the Albuquerque Pub. Schs., 2007 WL 2461629, at *3.  J. Martinez asserts that he requires

additional discovery to establish whether Butler was reckless in using the information in the

computer database to complete the Bench Warrant.  See Tr. at 25:15-18 (Herrera).  He asks only that

---

[9]  "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments.

the Court permit him to depose Butler to determine whether the circumstances regarding the entry of information in this case are the Taos County Magistrate Court's modus operandi, such that they could demonstrate recklessness.  See Tr. at 26:14-23 (Herrera).

None of the information which J. Martinez seeks to discover relates to the question whether Butler is entitled to absolute immunity.  Because the information that J. Martinez seeks does not relate to absolute immunity, there is no reason for the Court to delay its decision on the absolute-immunity question.  Furthermore, because the Court focused its qualified-immunity analysis on the legal question, whether the J. Martinez has established a violation of clearly established law, and found that there is no clearly established violation, additional discovery on the Taos County Magistrate Court's modus operandi would not alter the Court's decision.  While the information sought from Butler might be of benefit to determining whether there was a constitutional violation, it does not help with the clearly established law pron.  The law is not clearly established that, even if there is a better way to input and receive data and a way to reduce error, there would be a constitutional error here.  Because the information sought would not alter the Court's decision on either absolute or qualified immunity, the Court will deny the request for discovery pursuant to rule 56(d).

**IT IS ORDERED** that Defendant Jacqueline Butler's Motion for Summary Judgment (Absolute Immunity and Qualified Immunity), filed March 13, 2012 (Doc. 27), is granted.  The Court will deny the request for discovery pursuant to rule 56(d) of the Federal Rules of Civil Procedure in the Amended Memorandum in Opposition to Defendant Butler's Motion for Summary Judgment and Request that the Court Refuse to Rule on Motion Under Rule 56(f), filed March 28, 2012 (Doc. 30).

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Samuel M. Herrera
The Herrera Firm, P.C.
Taos, New Mexico

       *Attorney for the Plaintiff*

Frank D. Weissbarth
James P. Sullivan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

       *Attorneys for the Defendant Shirley Lujan*

Michael Dickman
Santa Fe, New Mexico

       *Attorney for Defendants Jacquelyn Butler and Jennifer Lucero*